HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ESTATE OF CARRIE ANDREA COINEANDUBH,<br><br>                        Plaintiff,<br>     v.<br><br>BOEING EMPLOYEES CREDIT UNION, a Washington nonprofit corporation,<br><br>                        Defendant. | CASE NO. 3:19-cv-05527-RBL<br><br>ORDER GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM<br><br>DKT. # 10 |

**INTRODUCTION**

THIS MATTER is before the Court on Defendant Boeing Employees Credit Union's (BECU) Motion to Dismiss for Failure to State a Claim. Dkt. # 10. The underlying dispute concerns Plaintiff Estate of Carrie Andrea Coineandubh's obligations pursuant to a home mortgage loan. The Estate alleges that BECU's sub-servicer, Cenlar FSB, entered into a loan modification agreement that BECU, the master servicer, subsequently reneged on. The Estate sued under the Real Estate Settlement Procedures Act (RESPA), Washington's Consumer Loan Act (CLA), and Washington's Consumer Protection Act (CPA).

In its Motion, BECU argues that the Estate's RESPA claim does not plausibly allege that BECU's conduct violated the Act or that it caused the Estate damages. BECU also contends that the CLA does not provide a private right of action and that BECU is exempt from liability under the law because it is a credit union. Finally, BECU argues that the Estate's CPA claim does not plausibly allege that BECU's actions were unfair or deceptive or impacted the public interest.

For the following reasons, the Court GRANTS BECU's Motion.

**BACKGROUND**

The Complaint contains the following allegations. Carrie Andrea Coineandubh, along with her then-husband, received a home mortgage loan from BECU on March 1, 2006, to finance their purchase of property in Tacoma, WA. Ms. Coineandubh remained obligated under the loan until she died intestate on April 9, 2018. At that time, the loan had been in default for over two years. Dkt. # 11-1 at 2. Ms. Coineandubh's brother Kyle C. Olive was appointed administrator of the Estate. Olive informed BECU of this information on March 14, 2018, and requested all information related to the loan account but BECU did not respond.

Olive then reached out to Cenlar FSB, which was then acting as the servicer on the loan. Cenlar did not immediately respond, but Olive was allegedly able to get Cenlar to agree to a Loan Modification in August 2018.[1] On behalf of the Estate, Olive made payments under the new terms through January 2019, but on January 17 BECU informed Olive that the Estate was "ineligible for loan modification because the Federal National Mortgage Association ('Fannie Mae') was the owner and assignee of the Loan and that the Estate did not provide the requested

---
[1] Although the Court must take the allegations in the Complaint as true, it is telling that the Estate has submitted no evidence of this Modification Agreement.

documentation in a timely fashion." Dkt. # 1 at 3. BECU refused to accept Olive's proffered payment for February.

BECU requested that the Estate submit a Mortgage Assistance Application by February 21, 2019, and the Estate did so on January 29. The Estate also requested that BECU "explain the legal basis whereby [it] had rejected the previously agreed to Loan Modification Agreement." *Id*. On March 1, BECU requested that the Estate provide documents to support its application. The Estate partially complied and renewed its inquiry about the Modification Agreement.

On April 3, BECU informed the Estate that Olive's request to be considered successor-in-interest was incomplete and that it needed to submit additional information within 90 days. However, the next day BECU informed the Estate that the deadline had passed and the Estate needed to submit a $61,608.92 payment immediately. The Estate apparently did not pay this sum but did submit a "qualified written request" on April 23 asking for the following information: "(1) a copy of the original promissory note; (2) a copy of the deed of trust; (3) documentation related to any scheduled foreclosure sale; (4) a signed lender acknowledgement for the first Loan Modification Agreement; and (5) any documents demonstrating proof defendant notified the Estate of defendant's intent to accelerate payment of the Loan." *Id*. at 4. BECU did not respond.

BECU informed the Estate on May 10 that it had failed to provide sufficient documentation validating the Estate's ownership rights over the Tacoma property. The Estate provided additional documents verifying Olive's successor-in-interest status a week later and renewed its request for information regarding a foreclosure. On June 6, BECU informed the Estate that a foreclosure sale was scheduled for June 21. However, the sale was subsequently cancelled and there is currently no sale pending. Dkt. # 11-2.

| | |
|---|---|
| 1 | The Estate sued on June 10, 2019. The Complaint alleges "property damages, including |
| 2 | attorney fees and costs, in an amount to be proven at trial, but not less than $288,900.00." |
| 3 | Dkt. # 1 at 7. |

**DISCUSSION**

**1.     Legal Standard**

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *id.*).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured

by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

**2.    RESPA Claim**

The Estate alleges the following RESPA violations: **(1)** "BECU failed to acknowledge the Estate assumed the obligations under Loan in accordance with the first Loan Modification Agreement in violation of 12 CFR §1024.32(c)(1); **(2)** BECU failed to correct its errors as the servicer of the Loan in violation of 12 CFR §1024.35(1), (2), (7), (10), and (11); **(3)** BECU failed to respond in any material fashion to the qualified written requests/requests for information it received from the Estate on April 23, 2019 and May 18, 2019 in violation of 12 U.S.C §2605(e); [and] **(4)** BECU is proceeding with the foreclosure sale currently scheduled for June 21, 2019 in violation of 12 CFR §1024.41(g)." Since BECU has discontinued the trustee's sale, the Estate now claims that these failures caused damages in the amount of the accelerated loan amount, which is $236,7789.18. Dkt. # 12 at 6.

BECU argues that, even if the Complaint's allegations are taken as true, BECU's failure to modify the loan did not violate RESPA and did not cause the Estate's claimed damages. Dkt. # 14 at 3. BECU also contends that attorneys' fees cannot constitute actual damages under RESPA. *Id*. The Estate responds that BECU's failure to correct its erroneous decision to renege on the Loan Modification Agreement violated numerous provisions of RESPA and caused the Estate to suffer losses equal to the accelerated amount on the loan, which is $236,789.

Under RESPA, failure to comply with any provision of the Act creates liability to an individual borrower for "any actual damages to the borrower as a result of the failure." 12 U.S.C.

§ 2605(f)(1). Courts have held that "[a]t a minimum, this requires a borrower to establish a causal link between the alleged pecuniary losses and the servicer's failure to comply with RESPA." *Durland v. Fieldstone Mortg. Co.*, No. 10CV125 JLS CAB, 2011 WL 805924, at *3 (S.D. Cal. Mar. 1, 2011); *see also Kariguddaiah v. Wells Fargo Bank, N.A.*, 2010 WL 2650492, at *6 (N.D.Cal. July 1, 2010). Damages may include "over calculation and overpayment of interest on a loan, the costs of repairing the plaintiff's credit, the reduction and/or elimination of the plaintiff's credit limits, and attorney's fees and costs." *Watson v. Bank of Am., N.A.*, No. 16CV513-GPC(MDD), 2016 WL 3552061, at *12 (S.D. Cal. June 30, 2016) (citing *Pendleton v. Wells Fargo Bank, N.A.*, 993 F. Supp. 2d 1150, 1153 (C.D. Cal. 2013)).

The meat of the Estate's RESPA claim relies on 12 U.S.C § 2605(e) and 12 CFR § 1024.35.[2] Section 2605(e) lays out a loan servicer's duties when responding to borrower inquiries. Upon receiving a qualified written request for information regarding loan servicing, a servicer must acknowledge receipt within 5 days and make any required corrections to the account and provide an explanation to the borrower within 30 days. § 2605(e)(1) & (2). Section 1024.35(e) provides that a servicer who receives a "notice of error" from a borrower must either notify the borrower that the error has been corrected or explain why it believes no error has occurred. A "notice of error" is defined as "[a] qualified written request that asserts an error relating to the servicing of a mortgage loan" and must explain "the error that the borrower

---

[2] The Estate's reliance on 12 CFR §§1024.32(c)(1) & 1024.41(g) is misplaced. Section1024.32(c)(1) describes the circumstances under which a servicer *may* provide a confirmed successor in interest with a notice informing them of their rights and obligations. This optional and conditional language does not support the Estate's generalized claim that BECU was required to acknowledge anything or that any failure could have resulted in damages. Section 1024.41(g) limits a servicer's ability to foreclose if a borrower submits a completed loss mitigation application. However, BECU has halted foreclosure proceedings. Because 1024.41(g) requires that a foreclosure sale actually be conducted, BECU is not in violation.

DKT. # 10 - 6

believes occurred." § 1024.35(a). Section 1024.35(b) identifies the specific categories of errors that a borrower may identify.

Here, the Estate alleges that it twice requested that BECU "explain the legal basis whereby defendant had rejected the previously agreed to Loan Modification Agreement." Dkt. # 1 at 3-4. The Estate also wrote to BECU requesting: "(1) a copy of the original promissory note; (2) a copy of the deed of trust; (3) documentation related to any scheduled foreclosure sale; (4) a signed lender acknowledgement for the first Loan Modification Agreement; and (5) any documents demonstrating proof defendant notified the Estate of defendant's intent to accelerate payment of the Loan." Dkt. # 1 at 4. The Estate alleges that BECU did not answer these requests. *Id*. at 3-4. However, BECU had previously informed the Estate that it was "ineligible for loan modification because the Federal National Mortgage Association ("Fannie Mae") was the owner and assignee of the Loan and that the Estate did not provide the requested documentation in a timely fashion." *Id*. at 3.

First, the Estate's claim under § 1024.35 falls short because none of the alleged communications with BECU actually "assert[ed] an error." *See Watson v. Bank of Am., N.A.*, No. 16CV513-GPC(MDD), 2016 WL 3552061, at *9 (S.D. Cal. June 30, 2016) (dismissing claim for failing to state "specific facts" as to the notice of error). The Estate's communications with BECU therefore did not qualify as "notice[s] of error" and did not trigger the duties explained in § 1024.35(e). Second, the Court is doubtful that the Estate's communications were sufficiently related to "loan servicing" to fall within the scope of 12 U.S.C § 2605(e) or 12 CFR § 1024.35. As the Ninth Circuit has explained, inquiries related to loan *terms* are not governed by § 2605(e), and § 1024.35(a) similarly limits the "notice of error" definition to loan *servicing*. *See Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 667 (9th Cir. 2012); *but see St. Claire v. Ditech Fin., LLC*,

No. 1:17-CV-3370-AT-JFK, 2018 WL 4850127, at *5 (N.D. Ga. Sept. 21, 2018) (holding that the Dodd Frank Act's amendments to § 2605(k)(1)(c) broadened the definition of "loan servicing"); *Hock Huat Yap v. Deutsche Bank Nat'l Tr. Co.*, No. CV-17-00229-TUC-RM, 2018 WL 4095167, at *3 (D. Ariz. Aug. 28, 2018) (questioning whether Medrano applies to all parts of 2605(k)(1)). The thrust of the Estate's argument is that BECU improperly rejected the Modification Agreement, which relates more to the loan's terms than its servicing.

However, more fundamentally, the Estate does not explain how BECU's alleged failures caused its damages. The Complaint does not plausibly show why answering the Estate's inquiries would have led to the reinstatement of the Modification Agreement. Furthermore, the Estate cannot plausibly claim to have suffered damages in the exact outstanding amount on the loan. Even if BECU had allowed the Estate to continue making payments under the modified terms, the Estate would still have to fulfill its loan obligations. The plausible measure of damages would have to consist of losses that the Estate has *actually* incurred and would not have suffered but for BECU's violations. *See Vethody v. Nat'l Default Servicing Corp.*, No. 16-CV-04713-HRL, 2017 WL 3335970, at *2 (N.D. Cal. Aug. 4, 2017) (dismissing RESPA claim where plaintiff alleged damages in the form of filing a lawsuit to stall foreclosure and had not yet lost their home).[3] Simply erasing the loan obligations was never a possibility even if BECU had abided by the alleged Modification Agreement.

**3.     CLA Claim**

BECU argues that it is shielded from CLA liability because it is a credit union and that Cenlar is similarly exempted from the law because it is a federal savings bank. BECU also

---

[3] While the Estate's alleged damages in the form of attorneys' fees may be valid, are they overly-conclusory as currently pled.

contends that the CLA does not provide a private right of action. In response, the Estate argues that BECU is vicariously liable for Cenlar, its sub-servicer, which is not a credit union and therefore not shielded from CLA liability. The Estate also argues that CLA violations are per se "unfair and deceptive" acts or practices that afford litigants a private right of action under the CPA.

The CLA does not apply to "[a]ny person doing business under, and as permitted by, any law of this state or of the United States relating to banks, savings banks, trust companies, savings and loan or building and loan associations, or credit unions." RCW 31.04.025(2)(a); *see also Burkart v. Mortg. Elec. Registration Sys., Inc.*, No. C11-1921RAJ, 2012 WL 4479577, at *4 (W.D. Wash. Sept. 28, 2012) (holding that the CLA "does not apply to banks"); *Deming v. First Franklin*, No. C09-5418 RJB, 2011 WL 5507210, at *5 (W.D. Wash. Nov. 8, 2011) (applying RCW 31.04.025(2)(a) to exempt a federally-regulated bank).

Here, as the Estate concedes, BECU is a credit union and therefore cannot be directly liable under the CLA. Cenlar is also a federally-regulated bank subject to control by the Office of the Comptroller of the Currency. Even if BECU could be vicariously liable for Cenlar's violations, both entities are exempt from CLA liability. The Estate's claim thus fails as a matter of law.

4. **CPA Claim**

BECU argues that the Estate's CPA claim should be dismissed because the Complaint does not adequately allege that BECU did anything "unfair" or "deceptive" that affects a broad swath of Washington consumers. BECU also contends that the Estate fails to allege that BECU's actions affect the public interest. The Estate responds that its RESPA and CLA claims constitute per se unfair or deceptive acts under the CPA.

| | |
|---|---|
| 1 | The elements of a CPA claim require an "(1) unfair or deceptive act or practice; (2) |
| 2 | occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her |
| 3 | business or property; [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title* |
| 4 | *Ins. Co.*, 105 Wash. 2d 778, 780 (1986). The first three elements "may be established by a |
| 5 | showing that the alleged act constitutes a per se unfair trade practice." *Id*. at 786. In the absence |
| 6 | of this, "it is the likelihood that additional plaintiffs have been or will be injured in exactly the |
| 7 | same fashion that changes a factual pattern from a private dispute to one that affects the public |
| 8 | interest." *Id*. at 790. |
| 9 | Because the Estate's RESPA and CLA claims have been dismissed as inadequate they |
| 10 | cannot serve as a basis for a CPA claim. Beyond that, the Estate fails to plausibly allege a claim |
| 11 | under the CPA. The Estate does not allege how BECU's conduct was unfair and deceptive or |
| 12 | why it impacts the public interest. In addition, as the Court has already explained, the Estate has |
| 13 | not plausibly alleged how BECU's actions caused it damage. The Estate's CPA claim is |
| 14 | therefore dismissed. |
| 15 | // |
| 16 | // |
| 17 | // |
| 18 | // |
| 19 | // |
| 20 | // |
| 21 | // |
| 22 | // |
| 23 | |
| 24 | |

**CONCLUSION**

For the above reasons, BECU's Motion to Dismiss for Failure to State a Claim is GRANTED. The Estate's CLA claim is dismissed with prejudice. All other claims are dismissed without prejudice and with leave to amend. The Estate has until 21 days after the date of this Order to sufficiently amend its Complaint and cure the deficiencies described above. BECU may renew its motion to dismiss if, in its view, the Complaint remains insufficient.

IT IS SO ORDERED.

Dated this 16th day of August, 2019.

Ronald B. Leighton
United States District Judge